# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                                      Criminal No. 08-cr-20583
                                                                        Civil No. 12-cv-13162

GREGORY MAPP,

     Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE, DENYING MOTION FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL, AND DENYING A CERTIFICATE OF APPEALABILITY

On January 4, 2013, Defendant Gregory Mapp filed an amended *pro se* motion to vacate sentence pursuant to 28 U.S.C. § 2255. Defendant, currently incarcerated at the Federal Correctional Institution in Elkton, Ohio, challenges his jury conviction of two counts relating to his importation, into the United States, of approximately seventy-five pounds of methylenedioxymethamphetamine ("MDMA" or "Ecstacy"), a Schedule I Controlled Substance. Defendant raises three grounds of error, all of which depend on his claim of ineffective assistance of counsel. The Government responds that Defendant has not shown ineffective assistance of counsel with regard to any of the three counts. Defendant also moves separately for an evidentiary hearing and appointment of counsel. For the reasons set forth below, the court will deny the motion to vacate sentence, deny the motion for an evidentiary hearing and appointment of counsel, and deny a certificate of appealability.

## I.  BACKGROUND

On October 25, 2008, Defendant, driving a tractor-trailer, entered into the United States at the Port Huron, Michigan border checkpoint on the Blue Water Bridge. Customs and Border Protection (CBP) Officer Emily Orgodzinski had a verbal exchange with Defendant, and suspected that he may have hidden something illicit in the cab of Defendant's truck.  She flagged it for further inspection.  With the assistance of several other CBP officers, Orgodzinski discovered approximately 114,000 pills divided among 108 separate vacuum-sealed plastic bags, and that had been stuffed into various locations in the vehicle's cab (above the driver's head between the roof and the headliner, inside the door panels, and elsewhere).  The pills tested positive for methylenedioxymethamphetamine.  At approximately $15 to $20 per pill, the collective street value of the pills was about $2.2. million.

The Government indicted Defendant on three counts:  (1) violations of 21 U.S.C. §§ 952(a) and 960(a) (importation of a controlled substance), (2) violations of 21 U.S.C. § 841(a) (possession with intent to distribute a controlled substance), and (3) 21 U.S.C. § 853 (criminal forfeiture).  During a hearing on April 28, 2009, Defendant rejected on the record the Government's offer of a Rule 11 plea agreement and elected to proceed to trial.  At the June 9, 2009 final pretrial conference on the record, Defendant reaffirmed his decision to go to trial.

At trial, which commenced on June 15, 2009, Defendant was represented by counsel, Carl J. Marlinga, and chose to testify.  His defense was that he did not know the pills were a controlled substance, claiming that he believed they were "knockoff" —i.e., illicit— erectile dysfunction drugs.  On June 18, 2009, the jury returned a verdict

2

of guilty on counts one and two.  After trial, Defendant moved for a new trial alleging

that his trial attorney's failure to identify and call Defendant's former attorney, Mitchell

Ribitwer, (or alternatively, Marlinga's failure to remove himself from the case in order to

be a witness) amounted to ineffective assistance of counsel.  On July 15, 2009, the

court denied Defendant's motion for a new trial.  On October 20, 2009, the court

sentenced Defendant to 120 months imprisonment on count one and 132 months

imprisonment on count two to run concurrently.  On October 23, 2009, Marlinga filed a

"Motion for Withdrawal of Attorney and to Appoint Federal Defender," which the court

subsequently granted.  The court entered a judgment on October 26, 2009.

Defendant appealed his conviction to the Sixth Circuit Court of Appeals, where it

was upheld.  *United States v. Mapp*, 439 F. App'x 510 (2011).  Defendant then timely

filed the pending motions.  The motion to vacate sentence alleges three grounds of

error and claims ineffective assistance of counsel with regard to each error.  Defendant

also moves separately for an evidentiary hearing and appointment of counsel.

## II.  STANDARD

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the

court which imposed the sentence to vacate, set aside or correct the sentence" on the

ground "that the sentence was imposed in violation of the Constitution or laws of the

United States, or that the court was without jurisdiction to impose such sentence, or that

the sentence was in excess of the maximum authorized by law, or is otherwise subject

to collateral attack."  28 U.S.C. § 2255(a).  As "[§] 2255 is not a substitute for a direct

appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United*

*States v. Frady*, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly

3

higher hurdle than would exist on direct appeal" to merit collateral relief, *Frady*, 456 U.S. at 166.  Consequently, "[t]o prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993)).  Though non-constitutional errors are generally outside the scope of § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a Defendant can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process,'" *Watson*, 165 F.3d at 488 (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)) (internal quotation marks omitted).

### III.  DISCUSSION

#### A.  Ineffective Assistance of Counsel

Defendant asserts three collateral challenges to his conviction, all based on ineffective assistance of counsel:  (1) failure to properly advise Defendant as to the consequences of rejecting a plea offer and going to trial, (2) failure to investigate his defense, including failure to call prior counsel as a witness (or alternatively, counsel's failure to remove himself from the case in order to be a witness), and (3) failure to properly advise Defendant as to the consequences of testifying at trial.

To support an ineffective assistance of counsel claim, Defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the first prong, Defendant must show that his counsel's performance was deficient, which

4

"requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  The appropriate standard by which to judge an attorney's performance is "simply reasonableness under prevailing professional norms." *Id.* at 688.  Under the second prong, Defendant must show that counsel's errors were prejudicial to the defense.  A Defendant may establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687.  A Defendant must show more than "some conceivable effect on the outcome of the proceeding"; he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693–94.

The Government argues that Defendant has failed to establish any prejudice, and thus all of his claims must fail.  When ruling on an ineffective assistance of counsel claim, the court need not evaluate the performance of the attorney if a defendant fails to establish prejudice from the alleged deficiency. *United States v. Cox*, 826 F.2d 1518, 1525 (6th Cir. 1987) (citation omitted) ("In deciding an ineffective assistance claim, a court need not address the two components of the claim in any order, or even address both components if an insufficient showing is made on one.").  Each claim will be addressed in turn.

### 1. Advice as to the Consequences of Rejecting a Plea Offer

The *Strickland* standard applies to claims of ineffective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).  In the context of an accepted plea bargain, under the prejudice prong, Defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." The principle is most often raised

where a defendant accepted a guilty plea and regretted it, but has also been discussed

within the obverse circumstance, i.e., a defendant who, as here, proceeds to trial rather

than accepting a bargained plea. *See, e.g.*, *McQueen v. United States*, 58 F. App'x 73,

76 (6th Cir. 2003) ("An incompetently counseled decision to reject a plea offer and go to

trial falls within the range of protection provided by the Sixth Amendment." (citing *Turner

v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir.1988), *vacated on other grounds*, 492 U.S.

902, (1989))).

Even assuming, arguendo, that Marlinga's performance was constitutionally

deficient, Defendant's claim must fail because he has not demonstrated a reasonable

probability that he would have pleaded guilty if counsel had properly advised him.

During the hearing on April 28, 2009, Defendant affirmatively rejected, on the

record, the Government's offer of a Rule 11 plea agreement and elected to proceed to

trial. The Government discussed the plea offer in detail, including the consideration

Defendant would receive for cooperation, the applicable guidelines, the potential for a

motion for a downward departure, and the proofs required as to Defendant's knowledge

on each count. The court summarized the Government's description of the plea offer

and explained the potential of Defendant receiving a greater sentence after a jury

conviction than if he agreed to the plea offer:

> THE COURT: Well, what I understand from all of this is that, if that if there's
> a conviction at trial, with no acceptance of responsibility credit given . . . [a]nd
> with no 5K1 motion, nor any corresponding recommendation from the
> Government, the defendant would be looking at a low end guideline range,
> suggested sentence somewhere in excess of 12 years, 12, 13, maybe 14
> years for this kind of MDMA importation. But with the assistance that the

2:08-cr-20583-RHC-RSW   Doc # 91   Filed 01/30/14   Pg 7 of 16   Pg ID 1271

> Government has suggested through a Rule 11, with 5K[1] and so forth, the defendant would be looking at somewhere around five years.

(Pg. ID # 1204–05.)  The court also discussed with defense counsel the applicable guidelines and potential sentences Defendant could receive and then asked Defendant to confirm his understanding of the situation and his decision to go to trial:

> THE COURT:  You've heard the description that Ms. Beck [Government attorney] has given me and clarification that I asked her for in terms of fundamental differences between the kind of sentencing that would probably occur with a plea as opposed to the kind of sentencing that could occur with a full trial in the event of a conviction at trial, right?
>
> THE DEFENDANT:  Yes, sir.

(Pg. ID # 1207.)  The court reiterated the ramifications of pleading guilty versus going to trial and asked Defendant how he would calculate the difference in potential sentences. Defendant answered "a substantial amount."  (Pg. ID # 1209.)  The court observed that there was a "huge potential benefit" to accepting the plea offer and asked Defendant if he had considered the "potential consequences . . . and . . . potential benefits he is giving up" in rejecting it.  (Pg. ID # 1210.)  Defendant answered, "Yes, sir."  (*Id.*).  Finally, the court asked Defendant if he had changed his mind after hearing the aforementioned details on the record to which he responded "No, sir."  (*Id.*)

In his reply, Defendant emphasizes that at the April hearing Marlinga also stated, "I have talked to my client extensively about what could happen at trial.  I must confess that it is my recommendation, but only slightly so, that a trial is the better way to go in this case."  (Pg. ID # 1198-99.)  Defendant argues that this statement lends credibility to his claim that Marlinga improperly encouraged him to go to trial.  However, as noted earlier, in order to satisfy the 'prejudice' requirement, Defendant must show that there is

7

a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Lockhart*, 474 U.S., at 58. Defendant has not met his burden. The very next words out of Mr. Marlinga's mouth were: "[I]'ve discussed with [Defendant] the downside of [going to trial] extensively. But this isn't one of those situations where the lawyer is fighting the client in this decision. I agree with him completely in this and we'll see what happens." (Pg. ID # 1199.) Defendant also attempts to argue that because Marlinga allegedly failed to investigate his defense, as discussed in greater detail in the next section, Defendant's decision to go to trial was uninformed. Where a motion to vacate sentence alleges that counsel failed to investigate or discover potentially exculpatory evidence, satisfaction of the prejudice prong "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Lockhart*, 474 U.S., at 58. Further investigation of Defendant's lack of knowledge defense would not have led Marlinga to change the plea recommendation. If anything it would have reinforced his recommendation to proceed to trial because, as discussed below, the "discovered" evidence was intended to validate the defense.

At the June 9, 2009 final pretrial conference, Defendant reaffirmed his decision to go to trial:

> MR. MARLINGA: Your Honor, I have talked with my client several times, including an extended conversation last night. And it is his decision to go to trial in this matter. I fully advised him of all the possibilities, and it is his decision to go to trial.
>
> THE COURT: Is that right, Mr. Mapp?

8

THE DEFENDANT:  Yes, sir.

(Pg. ID # 1224–25).  The court again discussed with the Government's attorney,

Marlinga, and Defendant, the applicable guidelines and the potential difference in

sentences that Defendant could face if he accepted the Government's plea offer or if he

were to be convicted at trial.  Defendant confirmed that it was his decision to go to trial:

> THE COURT:  You understand it is indeed possible for you to be convicted
> based upon the evidence in the possession of the Government here.  You
> have a defense you intend to proffer.  Whether the jury accepts that or
> accepts the Government's theory is going to be up to the jury.  Do you
> understand that, sir?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And you also understand the nature of the general instructions,
> the legal outline of the instructions that I'm going to give, consistent with your
> attorney's suggestion to the court; is that right, sir?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And this, this decision, Mr. Mapp, that you are making is not
> your attorney's decision.  It is and it must be your personal decision, having
> taken all these things into account.  Am I correct about that, sir?
>
> THE DEFENDANT:  Yes, sir.

(Pg. ID # 1228–29.)  In addition, when the court asked whether he was satisfied with Mr.

Marlinga's representation, Defendant responded "Yes, sir."  (Pg. ID # 1228.)

Defendant chose to reject the Government's plea offer and proceed to trial.  "His

self-serving statement now, after being convicted and sentenced, that he would have

accepted the plea offer is simply disingenuous" in light of his repeated affirmations that

he wanted to go to trial.  *Turns v. United States*, 248 F. App'x 708, 711–12 (6th Cir.

9

2007).  Regardless of Marlinga's advice,[1] there is simply no reasonable probability that

Defendant would have pleaded guilty.

### 2.  *Investigation of Defendant's Lack of Knowledge Defense*

Defendant argues that Marlinga failed to investigate his defense and consequently

failed to call Defendant's prior counsel, Mitchell Ribitwer, as a witness (or alternatively,

Marlinga failed to remove himself from the case in order to be a witness).  Defendant

argues that Ribitwer would have corroborated Defendant's lack of knowledge defense

because he would have testified that when he spoke with Defendant, two days after his

arrest, Defendant told Ribitwer that he thought he was carrying an erectile dysfunction

drug.  Defendant attempted this argument previously in his motion for a new trial.  (*See*

Dkt. # 40.)  It was unsuccessful then, and it is unsuccessful now.

The Federal Rules of Evidence would likely have barred the testimony, either from

Ribitwer or Marlinga, because it constitutes hearsay.  Hearsay is a statement that "(1)

the declarant does not make while testifying at the current trial or hearing; and (2) a party

offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R.

Evid. 801(c).  It is true that certain kinds of hearsay statements "are not excluded by the

hearsay rule," including, under Federal Rule of Evidence 803(3), "[a] statement of the

declarant's then-existing state of mind (such as motive, intent, or plan) or emotional,

sensory, or physical condition (such as mental feeling, pain, or bodily health)."  The

same rule, however, specifically excludes from the exception any "statement of memory

---

[1] The detail in which the attorney recited on the record his actual advice to his client about trial-versus-plea may not be often encountered, but strongly reinforces the court's decision here.

or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." *Id.* It is just such a statement Defendant refers to here as the substance of Ribwiter or Marlinga's potential testimony: Defendant's alleged out-of-court statement to his attorney offered to illuminate his "then existing state of mind," i.e., that he believed the drugs were something other than a controlled substance. Since that statement appears to constitute a "statement of . . . belief to prove the fact . . . believed," and nothing else, its presentation at trial would have likely constituted hearsay not saved by the exception created in Federal Rule of Evidence 803(3).

Moreover, even if Marlinga or Ribitwer's testimony were admissible, Defendant still cannot establish that Marlinga's alleged errors were prejudicial to his defense. "In the face of substantial evidence supporting [Defendant's] conviction, his claim that but for counsel's ineffective representation the outcome of the proceedings would have been different is hollow." *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992). In its response, the Government outlined the extensive inculpatory evidence it presented to the jury:

> (1) Defendant possessed 114,000 MDMA pills, or approximately 35 kilograms, valued at $2.2 million based on a street value of $15-20 per pill.
>
> (2) The pills were marked with commercial logos, which is common for ecstasy.
>
> (3) The pills tested positive for methylene dioxymethamphetamine, also known as MDMA or ecstasy, which is a controlled substance.
>
> (4) Deendant admitted he hid the pills, away from his businss location, which took a couple of hours. His elaborate efforts at concealment support an inference of knowledge.

11

(5) Defendant admitted to law enforcement that the person who gave him the pills, Wesley "Junior" Horton, was involved with a Jamaican drug trafficking organization.

(6) Defendant testified he was motivated to make money and to use his truck to do so.

(7) He lied to every law enforcement officer he encountered, including the agent with whom he was supposed to be cooperating.

(8) He admitted he took more than one trip with pills in his truck; he was paid $4,000 for the first trip and was promised $8,000–10,000 for the second trip.

(9) Defendant never told anyone in law enforcement that he lacked knowledge that what he was carrying was a controlled substance.

(10) Agent testimony that drug dealers do not entrust those without knowledge of what they are doing with $2.5 million worth of drugs supports an inference of knowledge.

(Pg. ID # 1189–90 (citations omitted).)  Given the substantial evidence that the Government presented against Defendant at trial, even if the testimony of Ribwiter or Marlinga had been admissible, he has not demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S., at 693–94.

### 3. Advice as to the Consequences of Testifying at Trial

The record is clear that Defendant not only elected to proceed to trial but also to testify at his trial.  As the Government puts it, "[i]t seemed that [in] consideration of rejecting the plea offer, proceeding to trial and presenting a lack of knowledge defense necessarily included that defendant would testify."  (Pg. ID # 1192.)  At the final pretrial conference on June 9, 2009, Marlinga also verified that Defendant would be testifying and explained the consequences of that decision:

12

> I said to [Defendant], because of the subjective nature of your defense, in spite of my best efforts in the voir dire of the jury members to seat the right members of the jury, who would be fair and objective in this case, I said that I have no doubt in my mind that there are 12 persons out there who, on the basis of the Government's proofs, could very well find you guilty.
>
> Likewise, I believe that there are 12 persons out [there], who on the basis of the government's proofs, could find you not guilty; and that a large part of this depends simply upon your believability and to the people that are put on the jury and those factors are beyond our control.  Other than that, I will use my best efforts to argue the case, but that a lot of it comes down to your sincerity and believability before those jurors.

(Pg. ID # 1229.)  Defendant insisted on proceeding to trial and testifying about his lack of knowledge defense.  Further, as the Government points out, had Defendant not testified, "his conviction may have been even more likely because the proofs, absent testimony to contradict the inferences of knowledge based on the evidence, would have been completely uncontroverted."  (Pg. ID # 1192.)

Regardless of Marlinga's advice, as established above, there is simply no reasonable probability that Defendant would have pleaded guilty.  As such, there is also no reasonable probability that Defendant would have proceeded to trial and chosen not to testify.

Defendant has not demonstrated that counsel's alleged errors were prejudicial to his defense, and thus has not shown ineffective assistance of counsel with regard to any of his claims.  Accordingly, the court will deny his amended motion to vacate sentence.

### B.  Motion for an Evidentiary Hearing and Appointment of Counsel

Rule 8 of the Rules Governing § 2255 Proceedings requires a judge to review the answer and other materials in the record "to determine whether an evidentiary hearing is warranted."  R. Gov. § 2254 Cases 8(a).  An evidentiary hearing is not required when the

13

record conclusively shows that the defendant is not entitled to relief.  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  Having reviewed the pertinent materials in this case, the court sees nothing that requires factual development at an evidentiary hearing.

Defendant does not have a constitutional right to counsel when pursuing a collateral attack upon his conviction under 28 U.S.C. § 2255.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citations omitted) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.").  Instead, 18 U.S.C. § 3006A provides that the court may appoint counsel for a person seeking relief under 28 U.S.C. § 2255 if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).  Additionally, a defendant is entitled to counsel when an evidentiary hearing is required in a § 2255 proceeding.  *See* R. Gov. § 2254 Cases 8(c).  The court is not persuaded that the interests of justice require appointment of counsel in this case.  Further, as no evidentiary hearing is required, the case also does not necessitate counsel's assistance.

Defendant's motion for an evidentiary hearing and appointment of counsel will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is

14

satisfied when a defendant demonstrates "that reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*,

529 U.S. 473, 484 (2000).

In this case, the court concludes that reasonable jurists would not debate the

court's assessment of Defendant's claims.  Therefore, the court will deny a certificate of

appealability.

## V.  CONCLUSION

For the reasons stated above, IT IS ORDERED that the amended motion to

vacate sentence [Dkt. # 75] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for an evidentiary hearing

and appointment of counsel [Dkt. # 89] is DENIED.

Finally, IT IS ORDERED that a certificate of appealability is DENIED as to all of

Defendant's claims.


                                                   s/Robert H. Cleland
                                                  ROBERT H. CLELAND
                                                  UNITED STATES DISTRICT JUDGE

Dated:  January 30, 2014


I hereby certify that a copy of the foregoing document was mailed to counsel of record on
this date, January 30, 2014, by electronic and/or ordinary mail.

                                                   s/Lisa Wagner
                                                  Case Manager and Deputy Clerk
                                                  (313) 234-5522